No. 28,522.

THE AMERICAN INDEMNITY COMPANY, *Appellant,* v. JOHN H. PEAK et al., *Appellees.*

(274 Pac. 227.)

Opinion filed February 9, 1929.

*R. P. Evans* and *George Clammer,* both of Manhattan, for the appellant.
*A. E. Crane, B. F. Messick* and *A. H. Crane,* all of Topeka, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: The question here involved is the right of the defendants to meet and cover the claim of the plaintiff, at this time not resisted, with a set-off in the form of damages for the conversion by the plaintiff of property belonging to these defendants. The case was tried to the court with a reference to a jury of the question of ownership of the property in dispute and the value thereof. The jury found that the defendants were the owners of the property, and fixed the value thereof, which the trial court approved, and the court further found for the defendants on the questions of estoppel, lien created by application for bond, and invalidity of an execution in an attachment action, allowing the set-off, which exceeded in amount the claim of the plaintiff, and then rendered judgment for defendants for costs, from which judgment the plaintiff appeals.

The action was brought by a bonding company to recover from the defendants, who were president and vice president of the National Paving Company, for the loss sustained by the bonding company as surety on the maintenance bond given by the paving company to the city of Oklahoma City. Two other bonds were executed by the same bonding company to the same city on the same paving contract, one a statutory bond and the other one against liens. On the latter the plaintiff was required to pay large sums, and after paying them brought suit in Oklahoma against the paving company, attaching the property in question. It ultimately sold the property upon execution in that action and applied the proceeds on its judgment against the paving company. This is referred to as the attachment suit, concerning which the trial court in this case held the judgment to be absolutely void for want of jurisdiction.

It is apparent that if there is merit to either of the contentions of the appellant as to estoppel or lien created by application for bond it will not be necessary to determine the validity or invalidity of the judgment in the attachment action.

This case was here before, and the decision is reported in 123 Kansas at page 502. The points therein decided were attacks made by the defendants on the claim of the plaintiff, and the case was remanded for further trial upon the question of the set-off claimed by the defendants, the court saying on page 506: "Respecting the contention of the defendants that the plaintiff has received credits

sufficient to relieve defendants of liability in this action, the record is not entirely clear."

The contention of the defendants in both trials was that they were in fact the owners of the paving plant and equipment being used and operated by the paving company of which they were the president and vice president, and that they had agreed to sell this equipment to the company when the company was able to pay for it, but nothing was ever paid; that the plaintiff, through the void proceedings in the attachment suit, wrongfully converted this property to its own use, and that these defendants should be allowed to recover from the plaintiff the value of the plant as a set-off to the claim held against them by the plaintiff. The trial court, in its twenty-second finding of fact, found that defendant Stingley, as president of the paving company, in the application of the company for this maintenance bond, represented that the paving company was the owner of the paving machinery, equipment and plant; that such written statement was made by him in good faith and without any intention to misrepresent the actual fact of ownership; and that the bonding company relied upon such statement, and on the strength thereof and of other statements contained in the application, executed the maintenance bond. The trial court also found, in its fourth conclusion of law, that neither of the defendants were estopped from claiming title to the paving plant and machinery sold by plaintiff in the attachment action. This conclusion is vigorously supported and maintained by appellees, largely upon the finding that the representations made as to ownership were made in good faith and without any intention to mislead or deceive the bonding company. Appellees cite numerous cases sustaining that theory and, without attempting to analyze or distinguish them except to observe that in many of them the element of fraud was being urged, we refer to and quote the first paragraph of the syllabus of one of them and the fourth paragraph of another:

"Where false representations are made by a vendor in the sale of property, the application of the doctrine of equitable estoppel does not necessarily depend upon the knowledge of the vendor of the falsity of the representations, but may rest upon the principle that one who by representing that a certain state of facts exists has misled another is precluded from denying the truth of such representations and from setting up a claim inconsistent with the facts as represented, where such claim would result in loss to the other and operate as a fraud upon him." (*Westerman v. Corder,* 86 Kan. 239, syl. ¶ 1, 119 Pac. 868.)

"In this state, false statements of fact, made by a seller to induce a sale and relied on by the buyer, are actionable, without regard to whether or not the seller knew the statements to be false, or acted recklessly in making them, or intended to deceive." (*Bice v. Nelson,* 105 Kan. 23, syl. ¶ 4, 180 Pac. 206.)

"Except in the case of an estoppel affecting the title to land the rule, which in many cases is laid down apparently without qualification, that an estoppel must possess an element of fraud, does not mean that there should be an actual fraudulent intent or design to deceive on the part of the party sought to be estopped, but only that the case should be one in which the circumstances and conduct would render it a fraud for the party to deny what he had previously induced or suffered another to believe and take action upon." (21 C. J. 1122. See, also, *Becker v. McKinnie,* 106 Kan. 426, 186 Pac. 496; *Pellette v. Mann,* 116 Kan. 16, 225 Pac. 1067.)

This statement, being signed by defendant Stingley as president and sworn to by him, binds him individually just as much as the company he was representing.

"Where upon the death intestate of the owner of a real-estate mortgage an order is made by the probate court appointing his widow as administratrix, and with her consent a further order is made that she release such mortgage on the ground that at the time of its execution the parties agreed that it was not to be enforced after his death, although such proceedings prove utterly void because taken in the wrong county she cannot, after undertaking to release such mortgage on the record as administratrix, assert a right in her own behalf thereunder against one who purchases the land covered thereby in reliance upon such transaction." (*Anderson v. Walter,* 78 Kan. 781, syl. ¶ 2, 99 Pac. 270.)

As far as defendant Stingley is concerned, having made a sworn statement that the paving company was the owner of the plant in order to induce the plaintiff to execute the maintenance bond, and the bond having been executed by the company relying upon such statement, he is now as a matter of law precluded from denying the truth of such sworn statement and from setting up a claim inconsistent therewith when such statement will result in a loss to the bonding company. But appellees say there was no loss to the plaintiff; that it got the property and it made no difference who owned it. If the defendants were here admitting the ownership of the property in question to have been in the paving company, their defense of wrongful conversion would not last very long; and if it is all the same regardless of who might have owned the property, could the paving company have made this defense of wrongful conversion? The difference it does make, and just what appellees are seeking to enforce, is a liability on the part of the plaintiff to

make good any property taken by it which belonged to others from whom it may have had no right to take the property. Can it be said that it makes no difference when one takes out of a garage a car by mistake exactly like his own and disposes of it as his own? The difference is in the duty of making good to the real owner for the loss he has suffered. This conclusion applies only to defendant Stingley, who made the financial statement, and does not, we think, estop defendant Peak, who did not sign the statement, nor even see it; but both defendants, as well as the paving company, signed the application for the maintenance bond, which contained some provisions with reference to this property and the rights of the bonding company to have a lien on it and appropriate it to pay any of the obligations of the paving company to the bonding company, regardless of whether it belonged to the paving company or either of these two defendants individually.

The following is a portion of section 8 of the application for the maintenance bond, which was attached to the amended petition herein as an exhibit and introduced in evidence by the plaintiff on the trial:

"For the better protection of the company, and in further consideration of the execution of the bond herein and hereby applied for, the undersigned, as of the date hereof, hereby sell, assign, transfer and convey to the company, all the right, title and interest of the undersigned, and each of them, in and to all the tools, plant, equipment and materials of every nature and description, that the undersigned, or either of them, may now or hereafter have upon the work covered by the contract, or in or about the site thereof, including, as well, materials purchased for or chargeable to said contract which may be in process of construction, or in storage elsewhere, or in transportation to said site, and hereby authorize and empower the company, its authorized agents or attorneys, to enter upon and take possession of said tools, plant, equipment and materials, and enforce and enjoy such possession at any time, for its own special use and benefit, upon the following conditions, to wit:

"This sale, transfer and assignment shall be and remain in full force and effect as to the date hereof, and shall be and continue in full force and effect until the final completion of the contract, and of any other contract covered by a bond of the company, given for or at the request of the undersigned, or either of them, and until final settlement of all matters growing out of any such contracts; and the company shall, in the event of any loss or default, have full right to sell and convey the whole or any part of the property hereby sold and assigned to make good any loss or expense incurred or to be incurred by it by reason of the execution of the bond herein and hereby applied for, or any other bond given for or at the request of the undersigned or either of them."

Whatever right or interest either of these two defendants ever had in such property, they effectually by this application conveyed or pledged it to the plaintiff herein, creating a lien thereon as between them and the bonding company as effectually as if they had regularly executed a chattel mortgage describing the property and had recorded it. This very action is to recover from them the liability which they as sureties agreed in the application they would pay, and they supported such agreement with a pledge or mortgage on all their right, title and interest in the property in question. Can they, after signing such a document and without first satisfying such obligation, be heard to say they are the owners of the property and have never parted with any of their interest in it? We think not, and think they are both estopped and precluded from maintaining an attitude with respect to this property inconsistent with that which they used to persuade this plaintiff to execute the bond for their benefit. The doctrine of equitable estoppel applies where parties owe a duty to others who have complied with their request by reason of representations and promises, and that duty with reference to pledges or collateral security is to first pay or satisfy the liability for which they obligated themselves. This duty is forcibly stated by Judge Brewer in the case of *Hamlyn v. Boulter*, 15 Kan. 376, as follows:

"Where B., being indebted on several judgments before a justice of the peace, procures H. to become surety for a stay of execution on said judgments, and to indemnify him gives a chattel mortgage on certain personal property, which mortgage expressly provides that H. shall have the exclusive control of the goods, shall sell them, and receive the proceeds, until he is fully repaid or otherwise indemnified, *held,* that judgment in favor of B. for the value of a portion of said goods should be reversed, where the findings fail to show that the judgments have been paid, and do show that H. has not realized enough from the sale of the goods to protect himself." (Syl.)

"No action, therefore, could be maintained against him for the conversion of the goods, or for the value of any portion of them, until he had been fully repaid or indemnified, either by a sale of the goods or otherwise." (p. 378.)

It is contended that estoppel was not sufficiently pleaded and that the matter of lien created by the application was not before the trial court. Section 5 of the second amended reply, we think, is sufficient to make this an issue in the case when not attacked by motion or objection. On page 26 of appellant's abstract, section 8 of the application was offered in evidence, and it was before the trial court for consideration as to its legal effect, both for estoppel and

the creation of a lien. The details of the disposal of this property pledged or mortgaged to the plaintiff are not of vital concern since such broad latitude was given the plaintiff in the application above quoted. The fact that it was disposed of through the court, even though that proceeding may have been void, will not disturb the rights of the plaintiff, under the terms of the application, to avail itself of the proceeds of the property sold and disposed of in good faith.

"Parties to a chattel mortgage, or other instrument in the nature of a chattel mortgage, may insert therein stipulations that upon conditions broken the mortgaged property shall be disposed of in a manner different from that named in § 17 of the chattel-mortgage act.

"Where, after condition broken, the chattel mortgagee takes possession of the mortgaged property and disposes of it in the very manner prescribed in such stipulations, and acts in good faith and with reasonable care and diligence, he is liable for only the actual proceeds of such disposition, and is not chargeable with the value of the property at the time and place it was taken possession of by him." (*Denny v. Van Dusen, Adm'r,* 27 Kan. 437, syl. ¶¶ 1, 2.)

The added details of form and ceremony beyond what was required by the terms of the application would not prejudice the rights of interested parties, even if some of such details were void.

The judgment of the district court is reversed and the cause is remanded with direction to enter judgment for plaintiff for the amount shown by the findings and conclusions to be due it with interest.