(No. 5488. July 14, 1930.)

LEAD CLIFF MINING COMPANY, a Corporation, Respondent, v. C. L. WICKSTROM, Appellant.

[290 Pac. 390.]

R. L. Edmiston and O. J. Bandelin, for Appellant, cite no authorities on points decided.

O. C. Wilson, for Respondent.

VARIAN, J.— Respondent brought this action to recover the possession of 160 acres of land situate in township 62 north, range 2 E., B. M., the "Western Bell" tunnel site, and the "Wildfire," "Ella L.," "Etta B.," "Lost Child," "Silver Crown" and "San Francisco" lode mining claims (unpatented), situate in the Yaak mining district, all in Boundary county, Idaho, together with the dwelling-houses, bunkhouses, barns and sheds situate upon said property. The cause was tried to the court without a jury, and judgment entered for plaintiff for possession of all said property, except the "Western Bell" tunnel site, ousting appellant and restraining him from molesting or disturbing respondent, awarding nominal damages for detention of the premises, and directing the issuance of a writ of restitution, etc. Defendant appeals.

Appellant, a mining engineer, obtained two agreements, each dated March 3, 1928, covering the mining claims above named, except the "Wildfire," from the owner, Idaho Lead-Silver Mines Company. In consideration of his driving 1,000 feet of tunnel thereon, he was to receive as compensation capital stock of said Idaho Lead-Silver Mines Company, as follows:

"First 100 feet—10,000 shares
Next 100 feet—12,000 shares
Next 100 feet—14,000 shares
Next 100 feet—16,000 shares
Next 100 feet—18,000 shares
Next 100 feet—20,000 shares
Next 100 feet—22,000 shares
Next 100 feet—24,000 shares
Next 100 feet—26,000 shares
Last 100 feet—28,000 shares"

In case the ore vein was cut at a distance less than 1,000 feet, the lease was to terminate when so cut. Ninety per cent of the stock earned on the completion of each 100 feet of tunnel was to be delivered to the lessee, the remaining ten per cent to be retained until completion of the contract. If the 1,000 feet was not completed, or the vein cut, the said ten per cent would be retained by the owner of the claims. Performance by the lessee, in whole or in part, was entirely optional with him. The lessee was to commence work on April 15, 1928, and diligently prosecute the same, driving not less than fifty feet per month thereafter, or 100 shifts average month's work. In case of failure to commence work or perform the same as stated, at its option the owner might, on thirty days' notice, terminate the agreement.

The second agreement, dated the same day, provided for the working of the property on a royalty basis, by the lessee, in case a vein of ore should be exposed while driving the tunnel, which would terminate the lease. There are other matters dealt with in the lease which may hereafter be re-

ferred to, if deemed necessary for an understanding of the case.

Appellant then interested capital in the undertaking, and respondent corporation was organized under the laws of the state of Washington. At the first meeting of its three directors, of whom appellant was one, held in Seattle, April 7, 1928, appellant Wickstrom was elected president and also general manager of the respondent, Lead Cliff Mining Company. At that meeting appellant's offer to convey his interest in an unnamed mining claim situate in the state of Washington, and his interest in the "Unity" and "Teddy" mining claims situate in Boundary county, Idaho, and to assign the lease agreements above mentioned to the Lead Cliff Mining Company, provided that the latter by "acceptance of this offer shall become obligated to severally keep and perform" all of the obligations imposed upon Wickstrom by said agreements; that the said corporation shall, ten days before the date of performance of the conditions imposed by said agreements, keep and perform the same, or, upon failure to perform, so advise Wickstrom; that upon failure to perform or so advise appellant, all interest of the corporation in said contracts shall revert to appellant, who may thereupon enter upon the premises and take "such steps as may be necessary to protect his rights under the said agreement," all in consideration of the issuance to appellant of 1,999,998 of respondent's 2,000,000 shares of its capital stock, as fully paid up and nonassessable, was accepted.

At the same meeting, the offer of appellant to donate 1,000,000 shares of the respondent corporation, to be held as treasury stock, was accepted. The officers were then given authority to dispose of 100,000 shares at ten cents a share.

The assignment of the agreements with Wickstrom was acquiesced in by the owner, Idaho Lead-Silver Mines Company. On June 29, 1928, it entered into a "modification lease agreement and extension" with respondent, reciting

the two agreements between it and Wickstrom, their assignment to respondent, and providing: The addition to the leased mining claims of the "Wildfire"; that the original agreement should be understood as providing a maximum footage of 1,000 feet, "consisting of tunnelling, drifting, raising, or sinking," for which payment in stock should be made; that "reasonable diligence" as used in the lease agreement should be construed to mean "an expenditure or work during each calendar year of an average minimum of fifty feet of tunnelling, drifting, raising, or sinking per month, or one hundred shifts per month average work"; that the lease be extended for a further period of five years, provided that during the period of extension respondent would pay a minimum of $500 in royalties each six months, or in the alternative pay $500 rental for each six months' period; and that time is of the essence of all the agreements between the parties. This agreement was ratified by respondent's board of directors on January 5, 1929. Appellant did not sign the agreement of June 29, 1928, as president, and testified he did not know of its existence until the trial. There is evidence that he had a copy of said agreement.

Upon the election of appellant as president and general manager, he entered into possession of the mining claims mentioned and actively commenced the prosecution of the work, having full and complete charge and control thereof, including the hiring and paying of the men employed. By October, 1928, dissension seems to have arisen, and respondent ran short of funds. On October 11, 1928, appellant wrote respondent that unless ample funds for carrying on the work were in the bank at Bonners Ferry on or before October 15, 1928, he would declare a forfeiture of his assignment of the lease and agreement of March 3, 1928. On October 24, 1928, by letter, appellant, after reciting certain grievances, resigned as president, and by separate letter, dated the same date, resigned as general manager, both resignations to take effect immediately. The following day,

while still trustee or director of respondent, appellant served notice of forfeiture of the assignment of April 6, 1928, on respondent, alleging failure of performance of the provisions of said contract lease, failure to notify appellant ten days before date of performance, etc., and that respondent's rights were declared forfeited. He likewise notified respondent that he had taken actual possession "and does hereby take and assume possession" of said mining properties. The record also shows that the 160 acres was a ranch near the property, which appellant leased for the respondent; that through inadvertence the lease was taken in Wickstrom's name instead of that of the Lead Cliff Mining Company. At a special meeting of the directors held on October 13, 1928, two directors being present, it was resolved that the number of trustees (directors) be increased to five "as provided in the by-laws."

Appellant remained in actual possession of the mining property until the date of the trial, and expended thereon some $15,000 (not advanced by respondent) in driving the tunnel thereon. Under date of January 28, 1929, respondent notified appellant that five persons, naming them, appellant not being included, had been elected trustees at the adjourned annual meeting of the corporation held on January 26, 1929, and demanding possession of the property and effects of the corporation. This action was commenced February 11, 1929.

The trial court found that respondent, on the twenty-fifth day of October, 1928, and for five days previous thereto, was in peaceable and actual possession and occupation of all the real property, including the six mining claims heretofore mentioned; that on said date, during respondent's absence, appellant unlawfully entered and took possession thereof; that by menaces and threats of violence appellant unlawfully holds and keeps possession of said property; that on January 31, 1929, demand was made by respondent for the possession of the property, which was re-

fused, etc. The evidence is sufficient to sustain the findings and judgment.

■ There is but one question involved in this appeal, viz., the right to the possession of the mining claims and real property described in the pleadings. Appellant testified that he was in possession before October 25, 1928, and afterwards to time of trial. It appears that he was in possession, in complete charge of and directing the work for respondent from the inception of the enterprise. When he resigned as president and as general manager, October 24, 1928, without surrendering possession of the properties, he still remained a trustee or director of respondent corporation. So far as the record shows, his possession was continuous during all the time above mentioned. His possession was the possession of the Lead Cliff Mining Company up to October 24, 1928, as president, general manager, and director of said corporation. Thereafter his possession (never surrendered) was still the possession of the corporation whose agent he was, as a trustee or director. A director or managing officer of a corporation is estopped to dispute the possession or custody of the property of the corporation. (14a C. J., p. 121, sec. 1889; 4 Fletcher's Cyc. of Corporations, sec. 2276, p. 3519; *Buckhorn Plaster Co. v. Consolidated Plaster Co.*, 47 Colo. 516, 108 Pac. 27; *Hoffman v. Reichert*, 31 Ill. App. 558, affirmed 147 Ill. 274, 37 Am. St. 219, 35 N. E. 527. And the same rule obtains in the case of *de facto* officers. (*Burley Tobacco Co. v. Vest*, 165 Ky. 762, 178 S. W. 1102.)

Judgment affirmed. Costs to respondent.

Givens, C. J., and Budge, Lee and McNaughton, JJ., concur.