No. 31,103.

J. S. Dodd, *Appellee*, v. Frank G. Boles, *Appellant*.

(21 P. 2d 364.)

Opinion filed May 6, 1933.

*Charles M. Tucker, Charles Vance,* both of Liberal, and *C. E. Vance,* of Garden City, for the appellant.

*H. W. Stubbs* and *J. D. Nye,* both of Ulysses, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The defendant in this action appeals from a judgment rendered against him rescinding a contract of purchase of thirty shares of stock in the Charles E. Davis Furniture Company and ordering the return to the plaintiff of the money paid and the note and mortgage assigned as the purchase price thereof. The grounds for rescission alleged by the plaintiff, and found by the court, were representations made by the defendant as to the financial

condition of the company, which were later found to be incorrect and false.

The first and most serious question raised by the appellant concerns the very nature and character of the action and whether or not the pleadings present a jury issue. The appellant contends that the action was originally one in *assumpsit* for money had and received, being for the recovery of $3,500, the purchase price paid by plaintiff for thirty shares of corporate stock, and was later by amendment changed to an action for the recovery of personal property, $500 paid in cash and indorsement and assignment of a note and mortgage for $3,000.

The petition alleges that the plaintiff on April 6, 1929, purchased from defendant thirty shares of stock in the Charles E. Davis Furniture Company and paid for the same the agreed price of $3,500; that the defendant, at and prior to the time of purchase, made certain representations as to the financial condition of the company, of which he was a director, and referred the plaintiff to the books of the company as a verification of his statements; that an examination of the books and records of the company substantiated the statements of the defendant, but both the statements and the books were later and after the purchase found to be incorrect and false; that there were found to have been at the time of the representations bills payable and accounts payable not listed or shown in the books or records of the company in excess of $13,000; that instead of having earned a profit of $7,000 the preceding year, as the statement and the books indicated, the company had sustained a loss; that he had relied upon the representations of the defendant and the books referred to by him, in making the purchase; that immediately after learning of the falsity of the representations made to him by the defendant and of the books to which he was referred by the defendant, the plaintiff tendered to the defendant the certificate of stock so purchased and demanded repayment of the money paid by him for the same, and the defendant refused to accept the tender of the stock and repay the money; that plaintiff has at all times since kept good his tender and renewed it with his petition. The petition concluded with a prayer "that said rescission be by the court approved and confirmed and that plaintiff have judgment herein against the defendant, for the sum of $3,500. together with interest."

The answer was a general denial and special denials to the effect that he never solicited nor in any way attempted to induce plaintiff to purchase the stock. The plaintiff was informed by defendant, and he well knew that defendant had no part in the active management of the company and had no knowledge of its affairs except as disclosed by its books and records. That on the contrary plaintiff informed defendant that he had thoroughly examined the books and records and knew its financial condition and that defendant's stock was worth $3,500 and defendant believed plaintiff's statement and relied upon it and sold him the stock for the amount he said it was worth. Defendant then charged plaintiff with mismanagement of the company after assuming charge thereof, and final abandonment of the property, and alleged that if the representations and books were incorrect, plaintiff could have discovered such condition by the exercise of ordinary care long before he made the tender; that he failed to make a tender within a reasonable time, and having thus elected to retain the stock, he had "estopped himself from any equitable right he might have claimed to rescind the sale of said stock."

Appellant in a very comprehensive and learned manner distinguishes between legal rescission and equitable rescission, and quotes eminent text writers as to the restrictions on the resort to equitable proceedings, limiting them to cases where the remedy at law is inadequate, and argues that in the case at bar there are no allegations or proof that the defendant was insolvent, or a judgment for $3,500 could not be collected from him, or that a lien upon the stock would not have been effective, further emphasizing his contention by pointing to the fact shown by the pleadings and proof that the contract in question was an executed and not an executory one.

R. S. 60-201 provides that—

"The distinction between actions at law and suits in equity, and the forms of all such actions and suits heretofore existing, are abolished, and in their place there shall be hereafter but one form of action, which shall be called a civil action. . . ."

In the case of *Minch v. Winters*, 122 Kan. 533, 253 Pac. 578, it was said:

"It should not be forgotten that in the simplification of our civil code and the statutory abolition of distinctions between actions at law and suits in equity (R. S. 60-201), the legislature was not engaged in curtailing the essential

powers of our courts of general jurisdiction. The legislative purpose was rather to emancipate the courts from those ancient artificialities of procedure which handicapped them in dealing out whatever measure of redress, legal or equitable, justice in any case required." (p. 539.)

In the case of *Farney v. Hauser,* 109 Kan. 75, 198 Pac. 178, it was held:

"In this jurisdiction, where all distinctions between forms of actions at law and of suits in equity are abolished, all matters of justiciable controversy arising between the same parties, whether legal or equitable, and whether already liquidated or merely capable of ascertainment, may be tried and adjudicated in one action." (Syl. ¶ 5.)

It has regularly been held in this state that the issues raised by the pleadings determine the nature of the action. (*Estey v. Holdren,* 126 Kan. 385, 267 Pac. 1098.) It was said in *Houston v. Goemann,* 99 Kan. 438, 162 Pac. 271, that the form and the essential nature of the action characterized it as an equitable one. In the case of *Investment Co. v. Burdick,* 67 Kan. 329, 72 Pac. 781, it was held that the manner of enforcing a cause of action must of necessity depend upon the nature of the cause of action arising out of the state of facts pleaded. To hold that this is an action in *assumpsit* to recover money had and received would require the court to disregard and entirely ignore the several allegations about rescission which are found not only in the petition but also a specific denial of them in the answer.

The nature of this action is the cancellation of the oral contract as to the sale and purchase of corporate stock, the returning of the certificate of stock and the restoration to the plaintiff of what he gave for the stock, because of misrepresentations alleged to have been made by defendant to plaintiff on which the plaintiff relied. The rights of the plaintiff under the allegations of his petition in this case are distinctly and unmistakably equitable, and the fact that he might possibly have proceeded differently along legal instead of equitable lines, does not deprive him of his right to equitable relief. (21 C. J. 107.)

A determination as to the essential nature of the action becomes necessary in this case because of the error assigned by the appellant in the denial by the trial court of the application of the appellant for a trial by jury. Where the action is grounded on equitable rights and where equitable relief is sought, as in this case, it does not present a jury issue, and the defendant is not entitled to a jury trial.

"While forms of action and the distinction between actions at law and suits in equity have been abolished, and a single remedy in the form of a civil action has been provided, by means of which any desired relief may be obtained, essential differences have not been obliterated and a jury is not demandable as a matter of right in those civil actions which are grounded on equitable rights and in which equitable relief is sought." (*Houston v. Goemann*, 99 Kan. 438, 440.)

That was a case where the cancellation of a deed was sought by the plaintiff. In the case of *Spena v. Goffe*, 119 Kan. 831, 241 Pac. 257, which was for an accounting between stockholders of a dissolved corporation, it was held to be naturally and essentially a proceeding in equity and in which "a party is not entitled to a trial by jury as a matter of right." In the case of *Fisher v. Rakestraw et al.*, 117 Kan. 441, 232 Pac. 605, which was for an accounting and to impress a lien on defendant's property because of fraud and misrepresentations, it was held:

". . . that the action being essentially one for equitable relief, a jury trial was not demandable as a matter of right, notwithstanding the facts pleaded by defendant to support his setoff and counterclaim, if involved in an ordinary action at law, might have been justiciable before a jury as a matter of right." (Syl. ¶ 2.)

The case of *Eagan v. Murray*, 102 Kan. 193, 170 Pac. 389, was an action upon a note and the answer alleged rescission of the contract in connection with which the note was given and return of the property. It was held plaintiff's cause of action was complete in itself, a single definite theory, and did not involve the question of rescission raised in the answer. (See, also, *Lapham v. Oil and Gas Co.*, 87 Kan. 65, 123 Pac. 863; and *Boam v. Cohen*, 94 Kan. 42, 145 Pac. 559.)

Appellant assigns error in the trial court granting permission to plaintiff to amend his petition after the taking of the testimony to conform to the proof, mainly in alleging that the consideration for the stock which he sought to recover, instead of being $3,500 in money, was $500 in money and a note and mortgage for $3,000. This was simply to conform the pleading to the facts proved and did not change substantially the claim or defense, as is fully authorized by R. S. 60-759 and upheld by the decisions. (*Tipton v. Warner*, 47 Kan. 606, 28 Pac. 712; *Malone v. Jones*, 91 Kan. 815, 139 Pac. 387; and *Stevens v. Vermillion*, 102 Kan. 408, 170 Pac. 807.)

But because this amendment was made more than two years after the action was commenced, appellant insists that the action is now

one for the specific recovery of personal property, and under the third subdivision of R. S. 60-306 is barred by the two-year statute of limitations. The petition has always sought to recover from the defendant the consideration given for the stock, which was at first described as $3,500 and later as $500 and a note and mortgage for $3,000. It is the same consideration, only differently described, and the defendant could not have been surprised at the change of description, and in no way does it constitute a new or different cause of action, and therefore it relates back to the commencement of the action.

"When a petition fails to state a cause of action an amendment which asserts a cause of action barred by the statute of limitations does not relate back to the first petition so as to deprive defendant of the defense of the statute." (*Powers v. Lumber Co.,* 75 Kan. 687, syl. ¶ 1, 90 Pac. 254. See, also, in this connection, *Tipton v. Warner,* supra; *Cunningham v. Patterson,* 89 Kan. 684, 132 Pac. 198; *Malone v. Jones,* supra; *Stevens v. Vermillion,* supra; and *Beneke v. Bankers Mortgage Co.,* 119 Kan. 105, 237 Pac. 932.)

Appellant urges that no actionable misrepresentations were pleaded nor proved, that all that was expressed by him to plaintiff was intended and understood to be simply an expression of an opinion, and the reference to the books of the company furnished the purchaser all the information had by the appellant, that the statements were not made as an inducement to purchase, and when made were believed to be true. Appellant further in the same connection directs our attention to the fact that no attempt was made in the proof to show a different state of facts except as to the liabilities and insists that was not shown. Most of these claimed defenses are of no avail under the Kansas rule, expressed as follows in *Bice v. Nelson,* 105 Kan. 23, 178 Pac. 395:

"In this state, false statements of fact, made by a seller to induce a sale and relied on by the buyer, are actionable, without regard to whether or not the seller knew the statements to be false, or acted recklessly in making them, or intended to deceive." (Syl. ¶ 4.)

This rule was observed and strictly followed in the case of *Pellette v. Mann,* 116 Kan. 16, 225 Pac. 1067.

In this connection it will be appropriate to state that the evidence shows that the first conversation between these parties on this subject entirely concerned the purchase of stock from another party, and that between the subsequent conversations had by them the defendant sent a message to plaintiff that his own stock was for sale.

"One who has induced another to deal with a company of which he is

president and has misled such other by representing that the company is the owner of certain property, is precluded from denying the truth of such statement and from setting up an ownership in himself, even if his original statement was made in good faith and without any intention to mislead or deceive." (*American Indemnity Co. v. Peak,* 127 Kan. 606, syl. ¶ 1, 274 Pac. 227.)

Affidavits from various creditors of the company were introduced in evidence by stipulation, showing the indebtedness of the company, from which the total indebtedness could be ascertained and was found and contained in the findings.

Appellant earnestly argues that plaintiff had no right to rely upon any statements made by him or his reference to the books, because the first talk was distinctly concerning the advisability of purchasing stock of Edwards, and because when the later conversations occurred, plaintiff had examined the books and was more familiar with them than the defendant himself and he had superior opportunity to investigate the matter of the assets and liabilities of the company. The evidence also shows that Edwards, the man of whom plaintiff first purchased stock, made representations, and reliance on representations would therefore not be wholly upon those of the defendant. Appellant cites *Anderson v. Kirby,* 105 Kan. 596, 185 Pac. 894, as authority for relieving defendant from liability for his representations because of equal opportunity. That was a matter of the size of two fields of corn and the value of the standing crops thereon, where both parties, life-long farmers, dealt at arm's length. Here the defendant had been a director and officer in the company for a year or more, while the plaintiff is not shown ever to have been in the furniture business, and went to the defendant, an acquaintance of long standing, for information in the first place about the Edwards stock. The same information would of necessity apply to any and all other stock in the company.

Appellant insists that plaintiff has lost the right he might have had for rescission by his delay in attempting to do so, which amounted to an election to confirm the transaction, citing *Sell v. Compton,* 91 Kan. 151, 136 Pac. 927, and other cases which hold that the privilege of rescission must be exercised without unreasonable delay and without unnecessary change in the property in his possession. In the case cited the party put on a ten-day special price sale of the stock of merchandise and was unable to restore it substantially as received. The right to rescind is lost more by the acts showing confirmation and the inability to substantially restore

the property than in the time intervening before discovery of the fraud or misrepresentations. In this case the defendant purchased the Edwards stock March 27, and the stock of the defendant April 6, and took charge about the time of the last purchase. He was elected president and his son was elected treasurer. Davis remained as manager. Discoveries were not made all at once but from time to time. Letters were written to all parties from whom purchases had recently been made. Replies showed discrepancies between them and the books. On June 1 plaintiff went to Wichita to see dealers; learned of the largest discrepancy; representative later came out; conference was held, defendant with others attending the same. On June 20 tender of stock was made to defendant and rescission asked. The court found it was after this visit to Wichita that it was learned by the plaintiff that the claim of the Innes Wholesale Furniture Company was $9,000 or $10,000 in excess of the amount shown by the company's books. The court further found that the total excess of actual indebtedness of the company exceeded that shown on the books of the company by about $12,000. Under these circumstances we conclude that the time intervening between the discovery of the serious difference in accounts was not unreasonable when no substantial or unusual disposition of the merchandise occurred before the tender was made and rescission demanded.

Appellant complains of the refusal of the trial court to permit the defendant to cross-examine the plaintiff as to representations made to him by Edwards before concluding the purchase of the Edwards stock, the theory of the appellant being he had a right to interrogate the plaintiff as to his knowledge of the company obtained from sources other than the defendant. His counsel had not inquired of him anything as to conversations with Edwards, and the court properly held it was not proper cross-examination.

The last assignment of error is that the findings are not sustained by the evidence. The findings are extensive and we think they are each and all supported and sustained by the evidence, even the one next to the last in which the court very justly exonerated the defendant, under the evidence, from any intention to misrepresent any of the facts or mislead the plaintiff.

With these findings the trial court, we think, very properly concluded that as a matter of law the plaintiff should have a decree for rescission of the contract as set out in the petition.

The judgment is affirmed.