SOLOMON'S MARINA, INC. ET AL. *v.* ROGERS

[No. 97, September Term, 1959.]

*Decided December 16, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Jack Pinkston,* with whom were *Pinkston, Foley & Smith* on the brief, for appellants.

No brief and no appearance for appellee.

HAMMOND, J., delivered the opinion of the Court.

A vendor of a boat to a corporate vendee, of which he was a major stockholder, director and officer, repossessed it and successfully defended a replevin action on the ground that passage of title was conditioned on payment of the purchase price. The corporate vendee appealed.

Rogers, the appellee, and Jefferson and Lutes were the

stockholders, officers and directors of Titanium Ores Corporation, chartered in 1953. In 1954 the corporation needed a boat to survey for ore in the Chesapeake Bay. It purchased a hull from Rogers, who among other related activities carried on a boatyard and marina. The minutes of the meeting of the directors of the corporation, held October 9, 1954, provide:

> "It was agreed to purchase from Tidewater Pier and Dredging a 26 foot Navy motor sailer hull for $1300.00. Payment for the hull to be made at the convenience of the corporation. If at some later date the corporation no longer desires or has need for the boat, the boat may be returned to Tidewater Pier and Dredging Company with improvements intact which improvements shall serve as payment for any and all use of the hull. The boat, named T102 is to be used for the exploration of our present and other mineral deposits."

At the same meeting the corporation agreed to purchase a truck from Jefferson, "Payment to be deferred and made at the convenience of Titanium Ores Corporation." Truck and title were passed to the corporation.

On October 23, 1954, beneath the word "approved," Rogers, Jefferson and Lutes each signed his name to the minutes. The minutes refer to the purchase of a hull, and Rogers says that was what was sold. The other two, particularly Jefferson, say that additions had been made to the hull before the sale in October, 1954. However, it is agreed that, whether before or after the sale, an engine, a cabin, a toilet and bunks were installed by Rogers at a cost to Titanium Ores of $2,854.70, so that its total investment in the boat was $4,154.70, of which $1,300.00, the original purchase price, remains unpaid. The boat was delivered to and used by the corporation until 1958 when, after a falling out with his confreres, Rogers went to Solomon's Marina, Inc., where the craft was berthed, and had it towed to his own yard. The replevin suit followed. In addition to the boat, Rogers sold or leased to the corporation equipment and services for which

he was paid over $82,000. The corporation, at the time of the trial, was in low financial condition and the trial judge appears to have concluded that, as of that time, it could not pay Rogers the $1,300.00 purchase price of the boat.

Jefferson and Lutes say that the sale of the boat to Titanium Ores was unconditional and that title was intended to, and did, pass to the corporation, just as did the title to the truck. Rogers says he was supposed to be given a note for $1,300 and that he kept the Coast Guard certificate of identity of the boat in his name as evidence that title was not to pass until the note was paid. He does not claim that a conditional contract of sale was intended to be, or ever, was executed.

In 1955 and in 1957, pursuant to exemptions from the Securities and Exchange Commission, Titanium Ores offered securities for sale to the public. On October 18, 1955, by offering circular of that date, 300,000 shares of common stock were offered at $1.00 a share from which the corporation realized over $200,000 net from purchasers of stock. The balance sheet of Titanium Ores, as of July 31, 1955, made a part of the offering circular, showed in the assets column equipment and machinery of $107,014.65 which, it was testified to without challenge, included the boat at a cost of $4,154.70, and in the liabilities column showed "Notes on Equipment—J. B. Rogers (boat)—$1,300.00."

On May 16, 1957, by offering circular of that date, Titanium Ores offered for sale to the public $250,000 face value of 6% convertible debentures and received approximately two hundred thousand dollars net from various purchasers. The balance sheet of the corporation, this time as of December 31, 1956, again was made a part of the offering circular. It showed among the assets various items of equipment, including "Power Boat for Exploration—$4,154.70 less note payable [to] J. B. Rogers $1,300.00—$2,854.70."

It was not disputed below, and the trial court found, that Rogers, a major stockholder, director and vice-president of Titanium Ores, authorized the issuance and had full knowledge of the details of the two offering circulars.

The corporate minutes, the only writings immediately concerned with the sale of the boat by Rogers to the corporation,

are perhaps inconclusive as to whether the Rogers version or the Jefferson-Lutes version of the transaction is the correct one. It is admitted by Rogers that the Coast Guard certificate does not control ownership, rather, that it is a combination of a license and means of identification, somewhat like the certificate of title of an automobile in most States. Compare *Welebir v. Gilbert*, 209 Md. 181.

Regardless of what the original bargain may have been, we think Rogers cannot now say that Titanium Ores did not acquire title as well as possession. We noted in *Evergreen Amusement Corp. v. Milstead*, 206 Md. 610, 616, that in *Saul v. McIntyre*, 190 Md. 31, 36, the Court said "Conduct of the parties to a written contract not only may amount to construction of ambiguous provisions but may evidence subsequent modification of the contract." It well may be that by their conduct Rogers and Titanium Ores have clarified whatever ambiguity there may have been in the corporate minutes or have modified their terms and effect, with the result that title to the boat passed to Titanium Ores. In any event, we find Rogers to be estopped to claim that title is not in the corporation. Estoppel has been defined and redefined by the cases. A late case is *Fitch v. Double "U" Sales Corp.*, 212 Md. 324, 338-339, where it is said: "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which may have otherwise existed, either of property, of contract or of remedy, against another person who has in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquired some corresponding right either of property, of contract or of remedy. * * * Equitable estoppel operates to prevent a party from asserting his rights under a general technical rule of law, when that party has so conducted himself that it would be contrary to equity and good conscience to allow him to do so." See also *Liberty Mutual Insurance Co. v. American Automobile Insurance Co.*, 220 Md. 497.

Rogers voluntarily and knowingly put out inducements to the general public, in the form of offering circulars, to invest

in or lend money to the corporation of which he was a major owner, as well as director and officer. Included in the inducements was the representation that the corporation owned a boat which had cost $4,154.70 and on which $1,300.00 was due, that was used to conduct explorations in aid of the corporation's business purposes. Individuals answered the inducements by investing and lending hundreds of thousands of dollars to a corporation which now appears to be struggling to continue, if not moribund. These owners in, and creditors of, the corporation have a right to have the boat be a part of the corporate assets, as it was represented to them to be, and the corporation is asserting this right against Rogers. Rogers is estopped to say that it cannot do so successfully. A case not dissimilar on the facts is *American Indemnity Co. v. Peak* (Kan.), 274 P. 227. See also *Lead Cliff Mining Co. v. Wickstrom* (Idaho), 290 P. 390; *Machovec v. Shipley,* 171 Md. 339; *Mohr v. Universal C. I. T. Corp.,* 216 Md. 197; *McNamara v. Feihe,* 139 Md. 516; *United States v. Maryland Casualty Co.,* 38 F. Supp. 479, 484; 3 Fletcher, *Private Corporations,* Sec. 854 (1947 Replacement Volume); 31 C. J. S. *Estoppel,* Secs. 78 and 106. Compare, by way of analogy, 2 Restatement, Second, *Trusts,* Sec. 313 (1959); 2A Bogert, *Trusts and Trustees,* Sec. 466 (1953).

The judgment must be reversed and judgment entered for appellant.

> *Judgment reversed, with costs; judgment entered for Titanium Ores, Inc., for the property replevied, and case remanded for the ascertainment of damages.*